Good morning, and it may please the court. My name is Thomas Pamela, the attorney appearing on behalf of the petitioner. In this matter I would like to reserve two minutes for rebuttal time, if I may. I was going to begin by addressing the issue that the court ordered us to discuss today, and that's whether Congress expressed a clear intent to make the amendment to 212c in ADEPA retroactive towards the commission of the offenses cited in that. And it's our position that they made no such clear expression of intent. Just by looking at the ADEPA statute itself, they don't specify the temporal reach of those provisions. So what does this, without regard to the date of commission, mean then? That wording is specifically directed to one of the sections that they cite in that statute, specifically 1251a2a2. If you look at that section, it deals with multiple convictions. And if you read that section, I believe it states that it doesn't matter when the commission of those convictions occurred. As long as there's multiple convictions, you are found deportable under that section. So it's our position that that's not indicative of an intent to make the whole statute, the entire statute, retroactive. So therefore that we can still find petitioner eligible for 212c relief because his commission of the offense occurred prior to the enactment. Well, let me ask you this question, which may, in my book, causes me to worry whether we even need to have the discussion. Isn't it true that your own client did not plead guilty until after ADEPA had already been passed? That is correct. He pled guilty. So if he pled guilty after ADEPA's passed, how are you going to get around our case law, which is pretty specific, that if you plead guilty afterwards, there is no way for you to take advantage of 212c relief? Correct. So the immigration judge in the BIA relied on matter of Abdel Ghani, which states that the conviction... Well, I'm not talking about matter of Abdel... I don't know how you said that. I don't know how to say it. If I look here, we have Alvarez-Brahas, which says right there, the finding of an alien... Finding an alien who pleaded guilty after the effective date of ADEPA is ineligible for 212c relief. Correct, but I believe in those cases that have been relied on by the opposition here, none of those individuals in those cases committed or were convicted after ADEPA. They were all committed before. Just a minute. Just a minute. The only reason we're talking about this at all is that it might have been that you were relying on 212c relief when you might have pleaded. But if in fact you pled afterwards, you didn't have any idea that 212c relief would even be available because we'd already got the Alvarez-Brahas on the books, we'd already had all of the things on the books that the ADEPA statute had been passed, there's no way you would have been able to rely. Correct, but we did address that issue in our brief that relies... I realize you addressed it, but I guess I'm still having trouble with it. If you didn't have any reason or ability to rely, why have we have to worry about it? Well, we said... I mean even if you had been charged before and thereafter pled after ADEPA was passed, we said under Alvarez that wasn't enough. I understand your concern, Your Honor. And I'm bound by Alvarez. I understand. If I may... You may. We did cite a Supreme Court case, Judelang v. Holder, in our brief as well, and they stated that if the holding regarding 212c eligibility causes an arbitrary or capricious circumstance for the petitioner, you're not bound by that holding. I think... So I think you were starting to talk about Cardenas. Can you say what you were going to say about that? Yes, Cardenas said that reliance on the offense at the time you pled guilty shouldn't be a determinative factor on whether the provisions in ADEPA should be applied to conduct prior to ADEPA. So the reliance has been held not to be really that relevant of a factor. I don't mean to interrupt you. So what you're saying to us, you're going to take this on bonk? If it comes to that, I would consider it, Your Honor. I mean, I don't know how I get around Alvarez Bajas, and if the only way to get around that is to take it on bonk. Forgive me if I'm incorrect, but I'm not sure if Alvarez was the exact same issue we have here today. Today, we have... Did you read it? Did you read the case to make sure? I did. I'm not remembering it. Is it your point that the Alvarez didn't talk about what happens when the conduct, the criminal conduct, was before ADEPA? Exactly, exactly. But what does the conduct have to do with it? The conduct is extremely important because it's the conduct or the commission of the offense that is penalized by ADEPA. But just a minute. If, in fact, we're not even giving the person who was charged prior, but pled thereafter any help, why are we giving somebody who wasn't even charged and just had conduct? Because ADEPA says that's the disqualifying event, the commission of an offense, not the conviction. And why do I not Why do I not, if you're right, why do I not adopt matter of Abdel Ghani? Because of Judelang v. Holder. And Judelang v. Holder says the underlying theme that we must all consider is the fitness of the arbitrary or capricious, it's not binding. And here, I think we gave the example in our brief of two individuals that commit the exact same crime the exact same day, and they're both placed in the criminal proceedings. The one who is lucky enough to be in proceedings that moves more quickly and is able to plead to the crime before ADEPA, they're 212c eligible, while the other person who's unlucky and presumably has no control over that proceedings will plead after and be ineligible. But you have two people that did the same conduct, the same time, their fitness to reside here is exactly the same, yet one is eligible for 212c and the other isn't. Judelang v. Holder said in those situations we're not bound by a holding that creates that arbitrary circumstance. And that's the quintessential example of an arbitrary holding is what occurred to petitioner in this matter. Do you have anything that I'm going to change on you? It seems to me that the conviction under Cal Health and Safety Code 11351 has been determined to be a trafficking crime or an aggravated felony. Are you agreeing with that? It's yes, it's not um, it wasn't one of our primary arguments. I believe the argument we've said is that it doesn't necessarily require a trafficking element within it. But I guess we're going to go to whether 11351 is divisible. It seems to me it is, don't you think so? It is, yes. And if I go here that your client was convicted of the sale of cocaine salt, a Schedule 2 drug, then it seems to me that there's not much to be said about in that particular instance. About the removability issue, no. Again, the big issue for me is the 212c issue. Even if he was found convicted of an aggravated felony trafficking crime, he would have been found eligible for 212c if the conviction occurred before. So the big issue to you is the 212c? Yes, yes, definitely. So the fact that he was, that the conviction was expunged, you agree that it still remains a conviction for immigration purposes? Well, we submitted an argument on that too, saying that, um... Well, I realize you submitted the argument. That's why I'm putting it to you. I guess I'm trying to figure out why Ramirez-Castro doesn't end that. Right, and it's not one of our stronger arguments. I acknowledge that. I think the argument was that Lujan, before was overruled, kind of left open the possibility of aggravated felonies, not creating the deportability for an aggravated felony because it's such a fluid section of inadmissibility. Lujan said CIMTs may, if expunged, may not be lead to deportability on a CIMT charge. And about the subject to torture, seems to me I'm having a tough time why substantial evidence doesn't support the BIA's conclusion that your client was not subject to torture. I'll rest on the brief on that issue, Your Honor. I just quickly want to go back to the 212c argument. The statute of ADEPA is clear. It penalizes the commission of an offense. They amended 212c by specifically taking out wording the conviction and replacing it with having committed. Because they penalized just the commission and not the conviction, and because Petitioner in this matter committed the offense before, he should be found eligible for 212c. They cite to a section in ADEPA that does not require a conviction, specifically the controlled substance section as a subsection of drug addicts. That's in ADEPA. That particular subsection doesn't require a conviction. What do we do with Nguyen v. Coleman? Your Honor, again, I don't think that dealt with the same exact issue we have here today. It does deal with the exact same issue. ...commission before ADEPA. I'm out of time, Your Honor. I'll rest on that, unless you have... Did you not look at that case? I did, Your Honor. It wasn't one of the cases I focused on. Again, I don't... ...before ADEPA and the conviction after, like it is here. This is a pretty novel issue as far as the cases go. May it please the Court. Victor Lawrence on behalf of the Attorney General. To start out at the same place that my opponent did with respect to this particular statute, we also agree that it was not Congress's intent to, with the language that is pointed out by the Court, to make this retroactive with respect to the commission of the crime. Rather... And so you agree with his thing that you need multiple offenses to be under this provision about... We do. We do agree that with respect to Step 1 of the — again, when we get to Step 2, we have big disagreements. But with respect to Step 1 of the retroactivity analysis, we agree that this particular language goes to the multiple convictions, the multiple crimes involving moral turpitude, because it's right before the clause otherwise covered by Section 1251A2AI, and that's the crimes involving moral turpitude, which says that in order to be guilty of a crime involving moral turpitude, you have to be convicted within 5 years or 10 years of the time that you enter the country. So what this clause is saying is without regard to the date of their commission, so whether it's within 5 or 10 years, and 10 years in the case of an LPR, whether it's 5 or 10 years, you look at the fact — you don't have to worry about those dates. It's just that you've been convicted twice, and then you wouldn't be eligible for a 212C relief. But that's not the issue that we have here, of course, because we have the aggravated felony charge, which is the 1251A2A3 and 1251A2B, which is the controlled substance charge. So in the retroactivity analysis, we go straight — as we did in our brief, we're not relying on a clear express by Congress. We're talking about what happened afterwards, and we're looking at the date of the conviction. And the reason why we look at the date of the conviction is simply by interpreting the language here, where it says, this subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense, et cetera. And in order to be deportable, it goes by the conviction date. And Judge Smith, you know, he was convicted twice, one month after AEDPA. We also have Alaska-Medina, where the individual pled guilty in January. But they're all about pleas, which is fine, and he does have his conviction after. But I don't think any of those cases talk about whether the conduct was before. Is that right? I agree with you that those two cases did not talk about whether the conduct was — the criminal conduct was before. And doesn't Cardenas-Delgado talk about giving new effect to the offense? I don't know how you get around the Cardenas-Delgado language about the offense having new consequences. I think the important quote is from St. Cyr, Inez v. St. Cyr, where they're talking about the conviction being the applicable — But St. Cyr doesn't talk about when the conduct was either. St. Cyr — but St. Cyr specifically indicates, with respect to its retroactivity analysis, that we're looking at the date of conviction. Excuse me. So — Well, because there was this reliance thing. But then we have — we have cases since that talk about how reliance doesn't matter. Vardalos talks about we don't worry about reliance anymore. Right. So I don't think he needs to show reliance under Vardalos. And then St. Cyr just doesn't talk about the conduct one way or the other. And Cardenas tells us to look at the conduct, when the conduct. Well, I slightly disagree in that St. Cyr does say look at the date of the conviction. And it does so at page 323 of the opinion, where it's talking about how petitioners are acutely aware of the consequences by pleading guilty at that time. Right. I mean, the Supreme Court was definitely concerned about reliance and when the guilty plea happened. But in the case law since, we've moved away from this reliance idea as a necessary factor. So I just don't know that St. Cyr talks about the argument they're making anymore. It just is — they're making a new argument. It — I would agree that St. Cyr doesn't talk about the precise argument. But I think from the context of the opinion, when you read how the Supreme Court was focused on the date of conviction, that's what matters here. And what we're talking about is whether this new law attaches new legal consequences to transactions that have already passed. And when you hear — And how does it not? The transaction is he did this crime. We would — we respectfully disagree, Your Honor. The transaction is his Nolo contendere plea in September of 1996. He committed the crime in September of 1995. AEDPA passed in April of 1996. And isn't there a new consequence now from his conduct of that crime? No, because there were no legal consequences at the time that he committed the crime with respect to immigration purposes. Yes, he was caught with the cocaine salt and at that time in September of 1995, but no legal consequences attached to that. No legal consequences attached until September of 1996, five months after AEDPA passed, a year and several months after the AEDPA Act had passed the Senate. Isn't he right that that timing is just arbitrary? I mean, what does that have to do with the severity of the crime or whether it means he should stay in the country? When the proceedings continued is, as he said, just sort of random, isn't it? I don't think it's random at all, Your Honor. I mean, first of all, as I started to mention, AEDPA passed the Senate in June of 1995, well before this individual committed the conduct. So even if you see then, he knew that this law was coming around the corner, which was going to say that no 212C relief was going to be available to an aggravated felon. Despite that, several months later or almost a year later in September of 1996, he pled nolo contendere. It's not an arbitrary result because if he knew that the law was coming into effect, he could have pled nolo contendere well before that. This idea that it's out of his control when he's going to plead guilty is just not realistic as the way criminal proceedings go, because he could have pled guilty from the very beginning of when he was charged. So for those reasons, it's the date of conviction that matters. Sorry. I mean, I think the issue of when he pled guilty is actually a little bit of a red herring once we have case law that says that the reliance doesn't matter. You don't need to show reliance. So I think the question is really whether there's a new consequence of the conduct that he'd already committed. Well, I mean, the conduct that we're talking about here, though, is his decision to plead guilty. That's when legal consequences attach to his actions. But say he hadn't pled guilty. Say he'd had a trial. He's convicted. It's still the conduct that caused that, right? I don't really understand, I mean, whether he pleaded. But we're talking about we're talking about pleading. I'm sorry to interrupt, but he pled guilty. Plead. And that's what the question is. Well, isn't it the conviction that matters? So it doesn't really matter whether he pled or was convicted. Well, true. But with respect to St. Cyr, for instance, we're talking about how 212C relates to convictions given by pleas when an individual pleads. So you're saying if he'd been convicted by a jury, there'd be a different way to argue? No, no, no. I'm not arguing that at all. And maybe I'm not making myself clear on that point. But the key issue that we argue in a recent bargaining today is that no legal consequences attach to his acts in September 1995. I mean, just because he was caught at that time doesn't give him the ability to apply for 212C relief when he's convicted five months after the law went into effect, saying if you plead guilty at this time, you are ineligible for a defense that you have. And I think — Are we talking about because he didn't become deportable? Exactly, Your Honor. And the deportable only comes by the conviction, right? That's exactly right. And as I understand it, 212C relief is really for those who are pleading, not for those who went to trial. That is correct as well. Wait. Can you explain? I guess I didn't understand that. So it does matter whether he went to trial or not? Why would that be? Maybe I misunderstood that. Well, because you're trying to take advantage of the relief and you're trying to say whether you would do it. And if you go to trial, you're not taking advantage. You finally felt guilty, as I understand it. Okay. On that point, I don't want to confuse the record. But whether — I don't know that 212C necessarily has to rely on a plea. It's just that's the context that it's been dealt with in various court cases. But if it was a conviction, I think you'd be saying the same provision applies. A conviction from a jury, I think, right? Unless there's something about the immigration law I didn't understand. I don't have anything to rebut that particular point. Not to say that there isn't anything that rebuts that point, but I don't think it matters. You seem to be suggesting it's his That is correct. By pleading guilty. That's the distinction that you're making. So to follow up on the point that Judge Friedland is making, if he went to a jury and was found not guilty — guilty, your argument would be different? No. I mean, my argument would still be the same, that no legal consequences attached until that guilty plea was in place. Until the conviction by a jury, you're saying. That's the question. Yes. The bottom line is that when he committed these acts, no legal consequences attached back in September of 1995. But there were laws about what legal consequences could attach that then later changed. But in September of 1996, he could have decided not to plead guilty at that point. But he did, knowing full well that the law was in place that said, if you are convicted at this time, deportable by reason of having committed any of those criminal offenses, you're ineligible for a T-12C relief. And that's what the government's position is in this case, Your Honor. Thank you. Thank you. I think we used all your time. Do you have anything you really want to tell us that you haven't already told us? If you do, I'll give you another 30 seconds. I would love to. Thank you. Okay. I don't want you to feel like we didn't give you your chance. I really appreciate it, Your Honor. Thanks. Just quickly, the issue of the new consequence. I think if we hold that ADEPA disqualifies people from T-12C simply by committing a crime, you have to hold that there was a new consequence created to the commission of those offenses. Because at the time he committed the offense, he was eligible for T-12C. Once ADEPA was enacted, because they penalized just the commission, not the conviction, that puts a new consequence on the commission of the crime. And that fulfills the second step in SEER, and that's why he should be found eligible for T-12C. Thank you. We understand your argument. Case 1572747 is submitted.
judges: N.R. Smith, Friedland, Lynn